The Hoersting Family Trust, Eleanor F. Sherman, Trustee v. Commissioner.
Hoersting Family Trust v. Commissioner
Docket No. 62871.
United States Tax Court
T.C. Memo 1958-3; 1958 Tax Ct. Memo LEXIS 232; 17 T.C.M. (CCH) 13; T.C.M. (RIA) 58003; January 14, 1958
C. Chester Guy, Esq., for the petitioners. David M. Robinson, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax of petitioners for the year 1952 in the amount of $1,992.43. The sole contested issue is whether the respondent erred in disallowing a deduction of $6,400 paid in 1952 claimed by petitioners as interest paid on indebtedness under section 23(b) of the Internal Revenue Code of 1939. Findings of Fact On August 20, 1940, the eight sons and daughters of Frank J. Hoersting conveyed in trust to Albert J. Hoersting and Eleanor Sherman as trustees, certain real and personal property. The trustees filed a fiduciary return for the year 1952, with the director of internal revenue for the district of Ohio. *233 The trust instrument, so far as here pertinent, provides as follows: "TO HAVE AND TO HOLD the same to the said Trustees, their successor or successors, in trust nevertheless, for the following uses and purposes and with the following powers, to-wit: "1. All and any of the income derived from the above described property shall be paid out by said Trustees in the following order, to-wit: First, for taxes, insurance, repairs and maintenance of said real estate; Second, for the payment of principal and interest upon obligations of the Trustees; and third, for distribution to the Settlors, in equal shares, for their natural lives and/or the duration of this trust. "2. In the event of the death of any of the Settlors prior to the termination of this Trust, his or her proportionate share of the income to be derived from the corpus of this Trust, shall be paid to the heirs of the body of such deceased Settlor, share and share alike, from the date of the death of such Settlor or Settlors until the termination of this Trust. Should any Settlor die prior to the termination of this Trust, leaving no heir of the body surviving, then his or her proportionate share of such income shall be *234 divided equally among the surviving Settlors, or the heirs of the body of any deceased Settlor, per stirpes. "3. Upon the 19th day of August, 1960, this Trust shall terminate and cease, and the corpus thereof then remaining in the hands and names of the Trustees shall be conveyed, transferred and delivered unto the Settlors, in like manner as provided for the distribution of the income thereof in the next preceding item hereof. Should the Trustees find that the corpus of this Trust then remaining in their hands cannot be equally and fairly divided and/or distributed, as hereinabove provided, without manifest injury to such corpus, the Trustees shall proceed to liquidate such real estate and/or personalty before making distribution to the Settlors. "4. The Trustees shall hold and control the corpus of this Trust during the life of this Trust with power to sell, transfer, convey, assign and deliver the same. The said Trustees shall hold, manage and control such property during the life of this trust with power to sell, transfer, assign and deliver the same and with full power to invest and reinvest the principal thereof, with like power over all investments, which investments or *235 re-investments may be made by the said Trustees in their sole discretion without limitation to such investments as may be by law designated as proper investments for Trustees. "5. The said Trustees shall have full power to converting personalty into realty and realty into personalty; to consent to consolidations and reorganizations; and to execute and deliver all powers of attorney, deeds, mortgages and agreements which they may deem necessary and advisable in the administration of this trust. "6. Receipts signed by the said Trustees for any monies or other property delivered to them shall at all times be sufficient to discharge the person or persons delivering same from all further accountability for such property and no person, corporation or transfer agent dealing with said Trustees as to matter purporting to affect the trust estate shall be concerned or required to inquire as to such transactions nor as to the disposition of the proceeds thereof. "7. The Trustees shall not be required to set aside any sinking fund, shall have full power to determine what amount be considered corpus and what income of this trust, and shall not be held accountable for any errors of judgment *236 but shall be liable only for gross negligence or wilful default in the administration of this trust. "8. Should either of the Trustees, named herein, die prior to the termination of this trust, the surviving Trustee shall serve as sole Trustee for the remainder of the term of this trust. Should both Trustees die prior to the termination of this Trust, Ralph E. Grimme shall serve as Trustee for the remainder of the term of this Trust. "9. This trust is hereby declared to be irrevocable and the Settlors hereby fully and completely release, convey, transfer and assign the property herein described to the Trustees herein named without any right, power or authority in any way to cancel, revoke or alter the transfer, conveyance or assignment herein referred to, or any of the terms of this trust agreement." On or about the same date, the trustees executed and delivered certain instruments designated as a "bond" in the aggregate principal amount of $80,000. Each settlor received a so-called bond in the amount as follows: Leo H. Hoersting
$ 9,643.75
Louis J. Hoersting
9,493.75
Marie Daugherty
11,543.75
Eleanor Sherman
10,443.75
Florence Quinnan
9,543.75
Hilda Plunkett
7,243.75
Albert J. Hoersting
10,693.75
Frank L. Hoersting
11,393.75
*237 The bonds were issued at the direction of and in the amount determined by the father of the settlors, and were designed to equalize the interests of his children taking into consideration amounts which the father of the settlors had previously advanced or expended on behalf of some of the children. The following instrument is typical of the bonds executed and delivered to each settlor of the trust. "BOND "$10,443.75 No. 4 "Albert J. Hoersting and Eleanor E. Sherman, Trustees. "20 YEAR 8% BONDS "Albert J. Hoersting and Eleanor E. Sherman, Trustees, for value received, promises to pay to Eleanor Sherman on the 19th day of August, 1960, the sum of Ten Thousand Four Hundred Forty-three & 75/100 ($10,443.75) Dollars in lawful money of the United States of America, at Cincinnati, Ohio, and to pay interest thereon in like lawful money out of the net income of the Trust at the rate of 8% per annum, payable quarterly on the 1st day of January, 1st day of April, 1st day of July, and 1st day of October, in each year at Cincinnati, Ohio, to holders of record, ten days prior to aforesaid quarterly interest periods, conditioned, however, upon the net income of the Trust being sufficient *238 during any interest period to pay the amount due as interest, in accord with the terms and provisions hereof. "This Bond is one of an authorized issue of Bonds in the aggregate principal amount of Eighty Thousand ($80,000.00) Dollars, all of like tenor and effect and known as their "20 Year 8% Bonds" of various denominations; all of which are issued, received and held subject to all the terms and conditions, and entitled to all the benefits specified in a Trust Agreement dated the 20th day of August, 1940, made by and between Albert J. Hoersting and Eleanor E. Sherman, Trustees, and Ralph E. Grime, to which Trust Agreement reference is hereby made for a description of the rights of the holders of such Bonds and of the Trustee, with respect to the enforcement thereof. "This Bond may be redeemed at the option of the Obligor on any interest date prior to maturity upon notice in the manner and upon the terms provided in the Trust Agreement by payment of its principal amount and accrued interest to the date of redemption; after such redemption date, interest on the Bonds called for redemption shall cease unless payment thereof shall be refused after presentation. "If any of the events *239 of default specified in the Trust Agreement shall occur, all Bonds outstanding hereunder may be declared to be due and payable in the manner and with the effect provided in the Trust Agreement. "The authorized aggregate amount of this issue of Bonds may, at any time before maturity of this issue, be increased by the affirmative vote of the holders of 51% in amount of this issue then issued and outstanding. "This Bond shall not be valid or become obligatory for any purpose unless or until the certificate endorsed hereon shall have been executed by the Trustee under said Trust Agreement, and properly registered. "This Bond is not transferable until after first being offered to the Trustee at the same price as offered; if the offer is in excess of Face or Par value, then these Bonds shall first be offered at Par to the Trustee; notice of such offer to be by registered mail. If the Trustee refuses to purchase same within thirty (30) days, then the holder hereof shall have the right to order transfer to a designated party and have same registered in his or her name at the office of Partnership. "IN WITNESS WHEREOF, Albert J. Hoersting and Eleanor E. Sherman, Trustees, have caused *240 this Bond to be signed by each partner. "/s/ Albert J. Hoersting, Trustee. /s/ Eleanor Sherman, Trustee. /s/ Ralph E. Grimme, Trustee. "TRUSTEE'S CERTIFICATE. "This is one of the 20 YEAR 8% BONDS described in the within mentioned Trust Agreement. "/s/ Ralph E. Grimme, Ralph E. Grimme, Trustee. "and "WHEREAS, the form of assignment for the transfer of said Bonds shall be in the following form: "ASSIGNMENT. "For value received, the undersigned, sells, assigns and transfers unto… Bonds of the unit face value of… each of Albert J. Hoersting and Eleanor E. Sherman, Trustees, and hereby authorizes said Trust to transfer same on their books. "Dated this… day of…. WITNESS: " At the time the trust was created in 1940, the total face amount of the bonds issued to the settlors thereof accounted for substantially all of the value of the equity of the settlors in the assets conveyed to the trust. For the taxable year 1952 the "Hoersting Family Trust" filed a fiduciary income tax return (Form 1041), no claim for interest paid under item 11 was made, but the amount of $6,400 was deducted under Schedule G as distributions of income to beneficiaries. The instruments *241 purporting to be "bonds" were issued for the purpose of evidencing the capital investment of the respective settlors in the trust, and were not issued with the intention of creating a bona fide creditor relationship. Petitioners have failed to show that the payments made in the taxable year 1952 to the beneficiaries of the trust constitute interest paid within the meaning of section 23(b) of the 1939 Code. Opinion LEMIRE, Judge: The question presented is whether the Hoersting Family Trust, an association taxable as a corporation, is entitled to deduct the amount of $6,400 in the taxable year 1952 as interest paid to the holders of certain instruments purporting to the [be] "bonds" issued by the trustees of such trust. The respondent primarily contends that petitioners are estopped by our prior decision in the proceeding entitled "The Hoersting Family Trust", Docket No. 4630, filed July 26, 1945, from now litigating this issue. In the prior proceeding the sole issue litigated and determined was whether "The Hoersting Family Trust" was an association taxable as a corporation. In the present proceeding the petitioners again raise that identical issue, but concede that our *242 prior decision is res adjudicata, as to that issue. Petitioners, however, contend that the question of the deductibility of interest paid upon the so-called "bonds" was not litigated nor decided in the former proceeding and, hence, the doctrine of collateral estoppel is not applicable to their claim based upon a different cause of action. We agree. Commissioner v. Sunnen, 333 U.S. 591; Sam Schnitzer 13 T.C. 43, affd. per curiam 183 Fed. (2d) 70. On the merits, the question presented is one of fact to be resolved from a consideration of the entire record. Gooding Amusement Co., Inc., 23 T.C. 408, affd. 236 Fed. (2d) 159, certiorari denied 352 U.S. 1031. Petitioners rely principally on the fact that instruments which are designated as "bonds" provide for the payment of a fixed sum with stated interest and have a definite maturity date clearly establishing that the parties intended to create a genuine indebtedness. The Kelley Co. v. Commissioner, 326 U.S. 521. This argument, we think, overlooks the fact that the "bond" by apt reference constitutes the trust agreement an essential to the *243 full understanding of the nature and extent of the promise to pay. The promise to pay is not a complete instrument in itself but is part of the trust agreement containing many independent provisions and requiring the doing of things by both the makers and the payee. Where two or more instruments are executed at the same time and referring to each other they must be read together as constituting a single contract. We have set forth in our Findings of Fact the pertinent provisions of the two instruments. Some of the provisions are obviously inconsistent. That the instrument is called a "bond" is not determinative of its character since we are concerned with substance and not form. The payment of interest is contingent upon the net income being sufficient to pay the interest when due. Interest is not cumulative. The principal is payable to a specific settlor if living at the termination of the trust, the maturity date of the "bond", and, therefore, is not negotiable. The distinguishing feature of a bond is that it is an obligation to pay a fixed sum with stated interest at a specified time. Stock on the other hand confers part ownership of the assets and the right to participate *244 pro rata in the surplus profits of the corporation and ultimately upon dissolution in the assets after payment of debts. Reading the two instruments together they partake in a marked degree of the distinguishing features of preferred stock. Upon the expiration of the trust the holders of the "bonds" are entitled to share in the assets of the trust and the so-called bond will be satisfied, not only upon the payment of the face value, but upon the payment of a ratable portion of the trust assets whether more or less than the amount called for upon its face. Such features are characteristic of the stock and are foreign to the accepted definition of a bond. An analysis of the terms and conditions of the two instruments convinces us that the instrument purporting to be a "bond" is, in legal effect, preferred stock, representing a capital ivestment rather than a bona fide indebtedness of the association. Petitioners contend that since the trust would have been entitled to deduct the amount in question as a distribution to the beneficiaries, the deduction should be allowed. The contention is without merit. The settlors of the trust chose to conduct their business as an association taxable *245 as a corporation and the income of the business is taxable under such method. Upon this record, we hold that petitioners have failed to show that the contested amount constitutes interest paid within the meaning of section 23(b) of the 1939 Code. The respondent's determination is sustained. Decision will be entered for the respondent.